**Paul S. McMURRAY, Appellant,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee.**

No. 89A04–0701–CV–3.

Court of Appeals of Indiana.

Dec. 28, 2007.

Rehearing Denied Feb. 4, 2008.

David W. Craig, Scott A. Faultless, Craig Kelley & Faultless, Indianapolis, IN, Attorneys for Appellant.

John T. Hume III, Michael R. Bain, Hume Smith Geddes Green & Simmons, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Paul McMurray ("McMurray") appeals from the Wayne Superior Court's grant of summary judgment in favor of Nationwide Mutual Insurance Co. ("Nationwide"). At issue in this appeal is whether "other insurance" clauses in the polices of both Nationwide and GuideOne Elite Insurance Company ("GuideOne") are mutually repugnant, requiring each insurer to be liable for a prorated amount of the damages. We reverse and remand for proceedings consistent with this opinion.[1]

### Facts and Procedural History

On May 30, 2003, McMurray was riding in the passenger seat of a vehicle owned by Jeffrey Richards ("Richards") and driv-

en by Richards's son, Matthew Richards. Sarah Winkler ("Winkler") collided with Richards's vehicle in Richmond, Indiana. She was driving a vehicle owned by Gary Coffey ("Coffey"). McMurray's damages were in excess of the insurance limits for Coffey's vehicle. Consequently, McMurray sought compensation for underinsured motorist benefits from Nationwide, Richards's insurance carrier, and also from GuideOne, his own insurance carrier.

As a passenger in Richards's vehicle, McMurray qualified as an insured under the Nationwide policy. The Nationwide policy has an underinsured motorist bodily injury limit of $300,000 per person and $300,000 per occurrence. The Nationwide policy also contains an "other insurance" clause in its language defining who it insures:

*We will also pay* compensatory damages, including derivative claims, which are due by law *to other persons who:*

1. *Are not a named Insured or an Insured household member for similar coverage under another policy;* and

2. Suffer bodily injury while occupying:

a) your auto[.]

Appellant's App. p. 137 (emphasis added).

McMurray also qualified as an insured under the policy issued by GuideOne to McMurray's father, Edwin McMurray. McMurray is therefore insured as a member of his father's household under the GuideOne policy. The GuideOne automobile coverage for underinsured motorist bodily injury has a limit of $50,000 per person and $100,000 per occurrence. The GuideOne policy also contains an "other insurance" clause, which provides:

1. We held oral argument on this matter on August 8, 2007. We commend counsel for

the quality of their written and oral advocacy.

*If there is other applicable insurance* available under one or more policies or provisions of coverage that is *similar to the insurance provided under this* Part of the *policy:*

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. *Any insurance we provide with respect to a vehicle you do not own shall be excess* over any collectible insurance providing such coverage on a primary basis.

Appellant's App. p. 92 (emphasis added).

McMurray filed a complaint against Coffey, Nationwide, and GuideOne on May 19, 2005. Nationwide, GuideOne and McMurray all filed motions for summary judgment. McMurray sought declaratory judgment as to his rights to underinsured motorist coverage under Nationwide's Policy. GuideOne sought declaratory judgment that Nationwide's coverage for McMurray was primary and GuideOne's coverage was excess. Nationwide sought declaratory judgment that McMurray was not an insured at all under the underinsured motorist coverage of its policy because McMurray had similar underinsured motorist coverage under GuideOne's policy.

On July 11, 2006, the trial court held a hearing on the motions. On December 5, 2006, the trial court entered summary judgment in favor of Nationwide, concluding that McMurray was not covered under Nationwide's policy. This appeal ensued.

Additional facts will be provided as necessary.

### Standard of Review

When reviewing a summary judgment ruling, we apply the same standard as the trial court. Summary judgment shall be entered "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." During our review, all facts and reasonable inferences drawn from them are construed in favor of the nonmoving party. We will affirm a grant of summary judgment if it can be sustained on any theory or basis in the record.

*Cincinnati Ins. Co. v. Am. Alternative Ins. Corp.,* 866 N.E.2d 326, 329 (Ind.Ct. App.2007), *trans. denied* (citations omitted).

An insurance policy is governed by the same rules of interpretation as other contracts. *Morris v. Economy Fire & Cas. Co.,* 848 N.E.2d 663, 666 (Ind.2006). The interpretation of an insurance policy is primarily a question of law for the court. *Harrison v. Thomas,* 761 N.E.2d 816, 818 (Ind.2002). "If the language of a policy is clear and unambiguous, we give the language its plain and ordinary meaning." *Briles v. Wausau Ins. Co.,* 858 N.E.2d 208, 213 (Ind.Ct.App.2006). "[T]he power to interpret contracts does not extend to changing their terms, and we will not give insurance polices an unreasonable construction." *Id.*

### Discussion[2]

■ This controversy is between two insurance companies as to which is primar-

---

**2.** For the first time in his Reply Brief, McMurray relies upon *Knowlton v. Nationwide Mutual Insurance Co.,* 108 Ohio App.3d 419, 670 N.E.2d 1071 (1996) to claim that Nationwide's "other insurance" provision is ambiguous and should be struck down as a nullity. Reply Br. of Appellant at 3. "The law is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief,

ily liable for providing underinsured motorist benefits to McMurray. The issue before us is whether the "other insurance" escape clause in Nationwide's policy is irreconcilable with the "other insurance" excess liability clause in GuideOne's policy, requiring pro ration of coverage between both policies.

> With regard to automobiles, three basic types of "other insurance" approaches have developed. (1) A pro rata clause restricting liability upon concurring insurers to an apportionment basis. (2) An excess clause restricting liability upon an insurer to excess coverage after another insurer has paid up to its policy limits. (3) An escape clause avoiding all liability in event of other insurance.

*Ind. Ins. Co. v. Am. Underwriters, Inc.,* 261 Ind. 401, 404–05, 304 N.E.2d 783, 786 (Ind.1973) (quotation omitted). In short, these clauses are insurance carriers' attempts to reduce or renounce their liability where concurrent insurance exists. *Id.* Here, Nationwide's policy contains an escape clause, and GuideOne's policy includes an excess liability clause.

Our supreme court addressed a similar scenario in *Indiana Insurance Co.* In that case, an automobile operated by a permitted driver struck two other automobiles, causing property damage. The permitted driver was covered under his own personal insurance policy as well as the automobile owner's insurance policy. However, the automobile owner's policy contained an "escape clause," which provided that the policy did not apply if the permissive driver had other available insurance. *Ind. Ins. Co.,* 261 Ind. at 402, 304 N.E.2d at 784–85. The permitted driver's personal insurance policy contained an "excess clause," which provided that its coverage would be in excess of any other valid and collectible insurance that was available to the driver. *Id.* Our supreme court observed:

> Competing clauses between insurers should not be allowed judicial sanction at the expense of removing the insured's coverage[.] ... The sense of avoidance logic, employed by insurers against each other, when applied against the insured, would lead to a conclusion that the latter, though protected by two policies, actually has none. This would be an unconscionable result.

*Id.* at 406–07, 304 N.E.2d at 787.

In examining both policies, our supreme court noted that when read separately, they appeared to afford coverage to the insured. *Id.* However, each of the policy's "other insurance" provision forced an examination of the opposing policy. The supreme court determined that this "circular riddle" could be resolved in one of three ways: (1) attempting to give effect to one policy provision over the other, (2) applying mechanical or arbitrary rules, or (3) holding both clauses to be conflicting and mutually repugnant, and, therefore, disregarding them. *Id.* at 407, 304 N.E.2d at 787.

The court opted for the last approach, concluding that this method provided indemnification for the insured and also, through the process of proration, gave effect to the general intent of the insurers. Our supreme court further observed that "if neither policy had contained the 'other insurance' provision, then each insurer would have been liable in a prorated amount up to the respective policy limits. The same reasonable result should be reached where the policy provisions conflict." *Id.* (citation omitted). This rule

they are waived." *Monroe Guar. Ins. Co. v. Magwerks Corp.,* 829 N.E.2d 968, 977 (Ind. 2005).

became known as the *Lamb–Weston* rule as it was adopted from the Oregon Supreme Court's decision in *Lamb–Weston, Inc. v. Oregon Automobile Insurance Co.,* 219 Or. 130, 346 P.2d 643 (1959).

Importantly, our supreme court has repudiated a "blanket" application of the *Lamb–Weston* rule. *See Citizens Ins. Co. v. Ganschow,* 859 N.E.2d 786, 793 (Ind.Ct. App.2007), *trans. denied.* In other words, our supreme court has rejected the "notion that the 'other insurance' clauses contained within the two policies must necessarily be declared mutually repugnant." *Id.* However, when "other insurance" clauses are indeed mutually repugnant, then the *Lamb–Weston* rule applies and both policies provide dual primary liability. *Id.* at 794.

Nationwide maintains that McMurray has no coverage under its policy and that GuideOne maintains primary coverage. Specifically, Nationwide contends that GuideOne's "other insurance" clause is not triggered by Nationwide's insurance because McMurray is not insured under the terms of Nationwide's policy since he has insurance with GuideOne. Nationwide relies upon *General Accident Insurance Co. of America v. Hughes,* 706 N.E.2d 208 (Ind.Ct.App.1999), *trans. denied,* for this proposition.

However, *Hughes* is not applicable to the facts at hand as that case involved the interpretation of Indiana Code section 27–8–9–10, regarding garage liability policies. This statute provides that when a permitted driver is operating a vehicle covered by the vehicle owner's garage liability insurance, then the permitted driver's own, private vehicle owner's insurance is primary. This rule applies most often when an individual is involved in an accident while test-driving a vehicle from a car dealership. Indiana Code section 27–8–9–10 also provides that the statute "applies if the only motor vehicle insurance coverage provided by the owner of the motor vehicle is under a garage liability policy." Ind. Code § 27–8–9–10(a) (2003). Since Nationwide's coverage at issue in this case is under a standard, private owner's auto liability policy rather than the specialized and broader garage liability policy, this statute, and consequently the discussion in the *Hughes* case, is not relevant to our analysis.

Nationwide also cites *Harden v. Monroe Guaranty Insurance Co.,* 626 N.E.2d 814 (Ind.Ct.App.1993), *trans. denied,* for the proposition that McMurray was not covered under Nationwide's policy. The *Harden* case also involved a garage liability policy but was decided on different grounds than the *Hughes* decision. In *Harden,* a permitted driver had an accident while driving an auto dealer's vehicle. The driver was insured with Farm Bureau, but she also claimed underinsured motorist benefits from the auto dealer's garage liability carrier, Monroe Guaranty. In particular, she claimed that she fell under the definition of "insured," as provided by the policy.

In determining that she did not fit the definition of "insured," our court relied on the definition of "insured" located in the liability portion of the policy instead of the definition found earlier in the policy. *Id.* at 818–19. Monroe Guaranty's liability portion of the policy specified that the customers of an auto dealership were not "insureds" unless the customer had no other available insurance or the available insurance was less than the financial responsibility law limits. Our court concluded that the driver was not insured under the policy because she had other available insurance. In *Harden,* unlike the case at hand, our court was not concerned with harmonizing conflicting "other insurance" provisions in like, standard private owners'

auto insurance polices, and once again, the coverage at issue involved garage liability coverage, a very specialized and broader type of commercial insurance coverage. *See generally*, 8A Couch on Insurance 3d Ed., § 120.38.

Furthermore, our court has since issued opinions casting doubt on rationale for *Harden's* holding. For example, our court has held that a passenger in similar circumstances was covered under the vehicle owner's uninsured and underinsured insurance policies in both *Spencer v. Bridgewater*, 757 N.E.2d 208 (Ind.Ct.App.2001) and *American Family Mutual Insurance Co. v. Federated Mutual Insurance Co.*, 775 N.E.2d 1198 (Ind.Ct.App.2002). In both of these cases, the uninsured and underinsured liability coverage was extended to "insureds" under the policy. Our court looked to how "insured" had been defined in the definition portion of the policy. We noted that "looking only to the liability section of an insurance policy ignores the plain meaning of the language used by the insurance company in its uninsured motorist section of their policy and would effectively rewrite the policy." *Am. Family Mut. Ins. Co.*, 775 N.E.2d at 1204 (citing *Bowen v. Monroe Guar. Ins. Co.*, 758 N.E.2d 976, 980 (Ind.Ct.App.2001)). Because the policy had defined "insured" as "any person 'occupying' the insured vehicle," and had only attempted to limit the coverage in a separate portion of the policy, our court held that the passenger was covered as an "insured." *Spencer*, 757 N.E.2d at 211; *Am. Family Mut. Ins. Co.*, 775 N.E.2d at 1203. Our court found that "it [was] disingenuous for [the insurer] to provide coverage on the one hand and attempt to take the coverage away on the

other hand." *Am. Family Mut. Ins. Co.*, 775 N.E.2d at 1204.

Nationwide contends that the holdings in *Spencer* and *American Family Mutual Insurance Co.* do not pertain to its policy, which has been drafted to avoid any such ambiguity. In its definitions, Nationwide provides that "insured means one who is described as entitled to protection under each coverage." Appellant's App. p. 110. Nationwide's Underinsured Motorists Coverage first grants coverage for "you or a relative," meaning the policyholder or the policyholder's relative. *Id.* at 110, 137. Then it grants coverage to other persons who "are not a named insured or an insured household member for similar coverage under another policy." *Id.* Nationwide argues that unlike the policies at issue in *Spencer* and *American Family Mutual Insurance Co.*, its policy has not granted coverage and then taken it away by another limitation. Rather, it has not granted coverage at all to individuals with other underinsured motorist coverage. At the least, this reasoning would necessarily require that Nationwide's policy and its "other insurance" clause should be read and interpreted first to preclude coverage before analyzing the coverage provisions of GuideOne's policy.

McMurray, on the other hand, contends that GuideOne only provides excess insurance to McMurray because he is covered under Nationwide's insurance, and therefore GuideOne's excess coverage is not "similar coverage" that would trigger Nationwide's escape clause.[3] McMurray, therefore advances that Nationwide maintains primary liability while GuideOne only

---

**3.** In his appellant's brief, McMurray argues that Nationwide's coverage is primary and that GuideOne's coverage is only excess. *See* Br. of Appellant at 9–14. However, in his reply brief, McMurray changes his argument to maintain that GuideOne's excess liability clause and Nationwide's escape clause are contradictory, rendering both policies' coverage primary. *See* Reply Br. of Appellant at 1.

maintains excess liability.[4] Again, this proposition requires first giving effect to GuideOne's excess liability clause before interpreting Nationwide's policy.

Both Nationwide's and GuideOne's policies require an examination of other applicable insurance first in order to determine whether they provide underinsured motorist coverage to McMurray. GuideOne's policy provides insurance to passengers riding in the insured's vehicle unless "there is other applicable insurance available under one or more policies or provisions of coverage that is *similar* to the insurance provided under this Part," in which case it only provides excess liability coverage for accidents occurring for an insured traveling in a vehicle he does not own. Appellant's App. p. 92 (emphasis added). Likewise, Nationwide's policy requires an analysis of any other applicable insurance policy by providing that it will pay for compensatory damages for anyone who is not "a named Insured or an Insured household member for *similar* coverage under another policy." Appellant's App. p. 137.

Both Nationwide and McMurray's interpretations of their policies disregard the *Lamb–Weston* rule, which clearly provides that a court "does not arbitrarily pick one of the conflicting clauses and give effect to it." *Ind. Ins. Co.*, 261 Ind. at 408, 304 N.E.2d at 788 (quotation omitted). As our supreme court noted, "[t]o solve the problem by picking up one policy, and reading it with a result which would be opposite to that reached if the other policy were first in order, is at best a pseudo-solution in that it only aggravates a circular riddle." *Id.* at 406, 304 N.E.2d at 787 (citation omitted).

■ If this court were to attempt to harmonize and give effect to both Nationwide's escape clause and GuideOne's excess liability clause, then McMurray would have no coverage under Nationwide's policy and only excess liability under GuideOne's policy.[5] Indiana law is clear that when insurance coverage provisions are mutually repugnant, they should be ignored, and each insurer should be liable for a prorated amount of the resultant damage not to exceed its policy limits. *Id.* As in *Indiana Ins. Co.*, Nationwide's escape clause and GuideOne's excess liability clause are irreconcilable. Therefore, the *Lamb–Weston* rule must be applied, and

---

4. Nationwide's reliance on *State Farm Mut. Auto Ins. Co. v. Powers*, 169 Vt. 230, 732 A.2d 730, 736 (1999) is misplaced because it is factually dissimilar from the facts of this case in that it harmonized a pro rata "other insurance" clause and an excess liability "other insurance" clause.

5. It is important to note that "[m]any insurance policies ... incorporate the generally accepted position that the 'insurer of a vehicle involved in a collision has primary [underinsured motorist] coverage for the passengers of that vehicle, while the insurer of a passenger in that vehicle has excess coverage for that passenger.'" *State Farm Mut. Auto Ins. Co.*, 732 A.2d at 735 (quoting *Elrod v. Gen. Cas. Co. of Wisconsin*, 566 N.W.2d 482, 486 (S.D. 1997)). *See also Millers Cas. Ins. Co. of Texas v. Briggs*, 100 Wash.2d 9, 665 P.2d 887, 889–

90 (1983). *Indiana has not adopted such a rule.* In 1983, our General Assembly enacted what has become known as the "Owner's Statute," which provides that the owner's motor vehicle insurance coverage is primary for a permitted user, but only for a permitted user. Ind.Code § 27–8–9–7 (2003). Such a statute has obvious appeal for its uniformity of result. We urge the General Assembly to consider and adopt a similar rule providing that the owner's motor vehicle coverage is primary for passengers occupying that vehicle, which is but a small step beyond, and entirely consistent with, the permissive user rule in Indiana Code section 27–8–9–7. The absence of such a rule engenders needless litigation between insurance companies to the detriment of both their policyholders and shareholders.

both clauses should be disregarded, making both GuideOne and Nationwide primarily liable on a prorated basis for McMurray's proven damages at issue.

Reversed and remanded for proceedings consistent with this opinion.

KIRSCH, J., and DARDEN, J., concur.