**Randall PERKINS, Appellant–Plaintiff,**

v.

**JAYCO, INC., Appellee–Defendant.**

No. 93A02–1104–EX–361.

Court of Appeals of Indiana.

Nov. 4, 2011.

Douglas A. Mulvaney, Elkhart, IN, Attorney for Appellant.

Thomas F. Cohen, Hunt, Suedhoff, Kalamaros LLP, South Bend, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Randall Perkins appeals the decision of the full Worker's Compensation Board (the "Board") affirming the decision of a single hearing member, who had concluded that Perkins' employer, Jayco, Inc. ("Jayco"), is not responsible for providing palliative care to Perkins. Perkins presents four issues for review, which we consolidate and restate as:

1. Whether the Board erred when it added three new findings to the decision denying Perkins' request for palliative care.

2. Whether the Board erred when it denied Perkins' Application for Adjustment of Claim requesting palliative care.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On December 5, 2003, Perkins, while employed by Jayco, sustained a work-related injury when 1000 pounds of laminated panels fell on him. Perkins filed an Adjustment of Claim, after which the parties filed joint stipulated exhibits. Jayco provided temporary total disability compensation and medical expenses for the injury.

Subsequently, Perkins filed an Adjustment of Claim seeking future medical treatment. The parties filed a hearing stipulation, which provides as follows:

1. That on December 5, 2003, [Perkins] sustained a work-related accident to his right knee and mid-back.

2. That the December 5, 2003[,] accident was accepted as a compensable work-related accident.

3. That [Jayco] provided all statutory TTD and medical.

4. That [Jayco] has already paid the 10% PPI impairment.

5. That [Perkins] was found to be at maximum medical improvement by

primary treating physician, Dr. Szynal, on July 25, 2004.

6. That [Perkins] was found to be at maximum medical improvement by orthopedic surgeon, Dr. Hartman, on October 25, 2004.

7. That [Perkins] was found to be at maximum medical improvement by orthopedic surgeon, Dr. Peyer, on April 20, 2004.

8. That the Board's own IME doctor, Dr. Javors, found [Perkins] to be at maximum medical improvement on October 29, 2004, after a three[-] or four[-]week home exercise program, as modified by his report dated 5-18-05.

9. That more recently, Dr. Reecer agreed with the earlier opinions that [Perkins] is at maximum medical improvement.

10. That Dr. Beatty believes that [Perkins] needs additional medical care.

11. That [Perkins'] medical expenses are presently covered by [his] group carrier.

12. That the attached medical records are admissible as evidence.

13. That the sole issue for the Board's determination is whether [Perkins] is at maximum medical improvement or whether he needs additional medical care.

Appellee's App. at 1–2. The single hearing member denied the claim for future medical treatment, and on appeal the full Board affirmed. The Board found that Perkins had reached maximum medical improvement ("MMI"), but it made no finding regarding his request for palliative care.

Perkins appealed the denial of his claim to this court in *Perkins v. Jayco*, 905 N.E.2d 1085, 1090 (Ind.Ct.App.2009) ("*Perkins I*"). Observing that Perkins had requested palliative care but the Board had made no finding on that request, we reversed and remanded with instructions for the Board to "consider the arguments and any evidence relating to the issue of palliative care and enter findings and conclusions thereon." *Id.*

On remand, Perkins requested a hearing before the full Board. Instead, a hearing was held May 25, 2010, before a single hearing member. On August 4, the single hearing member issued his findings of fact and conclusions, as follows:

Said Hearing Member, having reviewed the evidence submitted, and having reviewed the entire file, and being duly advised in the premises therein, now adopts the prior Stipulation of the parties as the Board's findings and further finds as follows:

1. That [Perkins] is not in need of any additional medical care, including palliative medical care, for the following reasons:

a. That [Perkins'] treating physician, Dr. Szynal, not only found that [Perkins] was at MMI, but that [Perkins] was discharged from her care with no indication that any additional medical care, including palliative medical care, was needed.

b. That Dr. Reecer, in addition to his finding that [Perkins] was at MMI, stated, "*No further treatment is indicated as it relates to the injury of December [5], 2003.*" [1]

c. That although [Perkins'] physician, Dr. Beatty, opined that [Perkins] may need "an occasional epidural steroid injection" for palliative care, the

---

1. The single hearing member's finding that the work-related accident occurred December 3, 2003, appears to be a typographical error.

The medical records and the parties' briefs on appeal provide that the accident occurred on December 5, 2003.

Board's independent medical examiner, Dr. Javors, stated that the epidurals "did nothing" to help [Perkins].

d. That as further evidence that [Perkins] does not need additional palliative care, Dr. Javors' initial October 29, 2004[,] report indicates:

1) That [Perkins] had no evidence of any instability;

2) That [Perkins] had no evidence of any radicular or neurological deficit;

3) That [Perkins] is "functioning well;"

4) That [Perkins] only needs a three[-] or four[-]week program of home exercise; and

5) That no further diagnostic tests are necessary.

e. That pursuant to the parties' stipulation, five doctors indicated that [Perkins] was at MMI. Although a finding of MMI does not directly address the issue of whether [Perkins] needs additional medical treatment, the Board can draw an inference from this medical finding that no additional medical care is needed.

f. That Dr. Szynal, Dr. Peyer, and Dr. Reecer did not indicate that [Perkins] needs additional palliative medical care.

2. That apart from the issue of [Perkins'] need for palliative care, the evidence established that the treatment, if any, is not causally related to the accident, based upon the following:

a. That Dr. Reecer specifically found that [Perkins'] need for medical care, if any, is not causally related to the accident;

b. That Dr. Szynal believed that [Perkins'] "discomfort" is secondary to [his] anxiety.

AWARD

IT IS, THERFORE, CONSIDERED, ORDERED AND ADJUDGED by the Single Hearing Member of the Worker's Compensation Board of Indiana that [Perkins'] request for additional medical care is denied.

Appellant's App. at 10–11 (emphasis added). Perkins appealed to the Board, which affirmed the single hearing member's decision and adopted the single hearing member's findings. The Board also made three additional findings: [2]

3. That the Single Hearing Member finds that [Perkins] provided treatment consistent with aggravation of an underlying pre-existing condition, which said condition has since then progressed.

4. That the evidence does not state that medical care was needed to limit the extent of a work-related impairment or reduce pain.

5. That the Single Hearing Member finds that Dr. Reecer's opinion to be more convincing and compelling than that of Dr. Beatty's [sic].

Appellant's App. at 5. Perkins now appeals.

## DISCUSSION AND DECISION

### Issue One: New Findings

Perkins first contends that the Board erred when it added "new findings on behalf of the Single Hearing Member, not the Full Board[,]" to the Board's decision denying Perkins' request for future medical treatment. Appellant's Brief at 26. Perkins asserts that "[t]his appears to be without any statutory authority or basis."

2. The findings are written as if made by the single hearing member. We discuss this discrepancy in Issue One below.

*Id.* Jayco responds that "the Board's couching of the findings as Single Hearing Member findings was simply a clerical error." Appellee's Brief at 9.

The preface to the additional three findings supports Jayco's argument. There, the Board "adopt[ed] the Single Hearing Member's decision *with the addition of Finding Nos. 3, 4, and 5* [.]" Appellant's App. at 5 (emphasis added). Based on this language in the preface, we conclude that Findings 3, 4, and 5 were made by the Board and consider them as such in determining the other issue raised on appeal.

**Issue Two: Sufficiency of the Evidence**

 Perkins next contends that the Board erred when it denied his claim for future medical treatment. Upon review of a decision of the full Worker's Compensation Board, we are bound by the factual determinations of the Board and may only consider errors in the Board's conclusions. *Obetkovski v. Inland Steel Indus.*, 911 N.E.2d 1257, 1260 (Ind.Ct.App.2009) (citation omitted), *trans. denied.* We will not disturb the Board's factual determinations unless the evidence is undisputed and leads inescapably to a contrary result. *Id.* (citation omitted). Accordingly, on review of the Board's findings of fact, we must disregard all evidence unfavorable to the decision and may consider only the evidence and reasonable inferences drawn therefrom that support the Board's findings. *Id.* (citation omitted). When reviewing a decision made by the Board, we neither reweigh the evidence nor assess the credibility of the witnesses. *Id.* (citation omitted). While we are not bound by the Board's legal conclusions, we will disturb the Board's conclusions only if it incorrectly interpreted the Worker's Compensation Act. *Id.* (citation omitted). It is the claimant's burden to prove a right to compensation under the Worker's Compensation Act. *Id.* (citation omitted).

 The parties submitted a joint stipulation to the single hearing member, and the record contains no transcript of an evidentiary hearing. Thus, the evidentiary material before the Board consisted of only the Stipulation, the parties' briefs, and the additional evidence discussed in Issue One. Courts generally favor stipulations that admit certain designated facts for the purpose of simplifying and expediting litigation. *Wright Tree Serv. v. Hernandez*, 907 N.E.2d 183, 189 (Ind.Ct.App. 2009) (citation omitted), *trans. denied.* Even though proper stipulations may be conclusive and binding as to all matters contained and necessarily included therein, such stipulations will not be construed to admit facts that were obviously intended to be controverted. *Id.*

In his Adjustment of Claim, Perkins requested palliative treatment. Our supreme court has allowed palliative methods under Indiana Code Section 22–3–3–4.[3] *Grand Lodge Free & Accepted Masons v. Jones*, 590 N.E.2d 653, 655 (Ind.Ct.App. 1992). Specifically, the court held that that statute "allows the Board to award prospective noncurative relief to limit or reduce the amount and extent of impairment." *Id.* The court further held that to the extent the employee's pain is reduced,

---

**3.** Indiana Code Section 22–3–3–4(c) provides in relevant part:

After an employee's injury has been adjudicated by agreement or award on the basis of permanent partial impairment ..., the employer may continue to furnish a physician or surgeon and other medical services and supplies, and the worker's compensation board may within the statutory period for review ..., on a proper application of either party, require that treatment by that physician and other medical services and supplies be furnished by and on behalf of the employer as the worker's compensation board may deem necessary to limit or reduce the amount and extent of the employee's impairment.

the "amount" of his impairment is reduced. *Id.*

Perkins presents several arguments on appeal regarding the propriety of the Board's denial of his request for ongoing medical treatment. As restated, Perkins first asserts that the Board erred when it concluded that a finding of MMI allows an inference that he was not in need of palliative care. He also argues that the Board erred when it determined that the future treatment he seeks is for a pre-existing condition, not the compensable work-related accident. We consider each argument in turn.

### MMI and Palliative Care

■ Perkins contends that the Board erred when it concluded that a finding that Perkins had reached MMI allowed the Board to "draw in inference ... that no additional medical care is needed." Appellant's App. at 10–11. We agree. This is not a correct statement of the law.

Again, palliative care is allowed under Indiana Code Section 22–3–3–4(c), which provides for "medical services and supplies, and the worker's compensation ... to limit or reduce the amount and extent of the employee's impairment." In other words, palliative care is not curative. On the other hand, a finding of MMI establishes that the patient has reached his maximum healing potential. *See Cox v. Worker's Compensation Bd.,* 675 N.E.2d 1053, 1054 (Ind.1996) ("This concept, also designated 'quiescence' in the jargon of worker's compensation, essentially means that the worker has achieved the fullest reasonably expected recovery."). MMI does not speak to the need for future care that could limit or reduce the patient's impairment. For example, where an employee with a permanent back disability has reached MMI with regard to healing, pain may persist. Treatment of that pain may mitigate, though not alleviate, the effects of the disability. *See Perkins I,* 905

N.E.2d at 1090. Such is the nature of palliative care allowed under Section 22–3–3–4(c).

Here, again, the Board concluded that a finding of MMI allows an inference that future treatment is unnecessary. But MMI relates to a curative state. Palliative care does not. Instead, palliative care is treatment to reduce the effects of an impairment, not to cure the condition causing the impairment. Thus, the Board erred in concluding that a finding of MMI allows an inference that palliative care is not needed.

### Basis for Future Treatment

■ Perkins also contends that the evidence does not support the finding that he is seeking future treatment for a condition other than the compensable work-related injury. Several of the Board's findings are relevant to that issue. However, the following two findings are dispositive:

> 2. That apart from the issue of [Perkins'] need for palliative medical care, the evidence established that the treatment, if any, is not causally related to the accident, based upon the following:
>
>> a. That Dr. Reecer specifically found that [Perkins'] need for medical care, if any, is not causally related to the accident[.]
>
> * * *
>
> 5. That the [Board] finds Dr. Reecer's opinion to be more convincing and compelling than that of Dr. Beatty's [sic].

Appellant's App. at 5, 11.

Dr. Reecer's report is dated March 2007. Dr. Beatty also wrote a letter in 2007 regarding Perkins' condition and continued treatment. Dr. Beatty's correspondence, addressed to Perkins' counsel, recommends palliative care but does not discuss any condition predating Perkins' December 2003 accident. Neither does it specify that the future treatment Perkins seeks is related to the back injury sustained in that

accident. The Board found Dr. Reecer's report to be "more convincing and compelling" than Dr. Beatty's report. *Id.* at 5. Under our standard of review, we are constrained to consider only Dr. Reecer's report to the exclusion of Dr. Beatty's report. *See Obetkovski,* 911 N.E.2d at 1260. And Dr. Reecer's report supports the Board's conclusion that the future treatment Perkins requests is not related to the injury sustained in the December 2003 work accident.

There is considerable evidence in the record that would support a finding that the future treatment Perkins requests is causally related to his December 2003 work accident. That evidence includes reports and correspondence from other physicians who examined or treated Perkins since his December 2003 accident. But those records are three or four years older than Dr. Reecer's report. And, again, the Board found that the treatment Perkins requests is not related to his compensable injury. To the extent Perkins argues to the contrary, Perkins asks us to consider evidence unfavorable to the Board's decision, which we cannot do. *Id.*

Perkins also argues that the evidence does not support the additional findings made by the Board. Specifically, he argues that there is no evidence to show what preexisting condition is referenced in the finding in Paragraph 3 or to support the finding in Paragraph 4 that the evidence "does not state that medical care was needed to limit the extent of a work-related impairment or to reduce pain." Appellant's App. at 5. But, again, Dr. Reecer's report directly supports those findings. Perkins' relies on evidence that disputes Dr. Reecer's report, but, again, we cannot reweigh the evidence. *Obetkovski,* 911 N.E.2d at 1260.

We cannot say that the Board erred when it concluded that the future treatment Perkins seeks is not causally related to his December 2003 work accident. And because the treatment is not causally related to the accident, it is not authorized under worker's compensation law as palliative care. Thus, the trial court did not err when it denied Perkins' request for future medical treatment.

### Conclusion

The Board erred when it concluded that a finding that Perkins has reached MMI allows for an inference that future treatment is not needed. But that error is harmless because other findings support the Board's decision denying Perkins' Adjustment of Claim. Specifically, Dr. Reecer's report supports the finding that the future medical treatment Perkins' requests is not causally related to his December 2003 work injury. Perkins' arguments to the contrary go to the weight of the evidence, which is not subject to review on appeal. Thus, we affirm the finding in paragraph 4. And because the Board found that the treatment requested is unrelated to the compensable injury, we must conclude that the Board did not err when it denied Perkins' request for palliative care.

We affirm.

RILEY, J., and MAY, J., concur.